BALTIMORE COUNTY DEPARTMENT OF EDUCA-
TION, Etc. *v.* HENRY A. KNOTT, INC. et al.

[No. 290, September Term, 1963.]

418

*Decided April 14, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Wilbur D. Preston, Jr.,* with whom were *W. Hamilton White-ford* and *Due, Whiteford, Taylor & Preston* on the brief, for the appellant.

*Paul J. Feeley,* with whom was *John A. Pryor* on the brief, for the appellees.

PRESCOTT, J., delivered the opinion of the Court.

The trial judge found that appellant's suit had not been brought within the time permitted by Code (1963 Cum. Supp.), Article 90, Section 11, and entered judgment in favor of the appellee (defendant below) for costs.

Appellant raised several questions in its brief, but has abandoned all except one: "Upon a showing by the appellant that on the specifications final payment to the contractor shall be due within thirty days after final satisfactory completion of work has been certified by the architect and upon further proof that the architect's final certificate issued December 20, 1961, is the legal effect thereof that final acceptance occurred on December 20, 1961, and that therefore suit was filed timely under the limitation period of the statute, suit having been instituted on December 4, 1962?"

The appeal was submitted on an agreed statement of facts, pertinent portions of which follow:

"About January 12, 1960, Henry A. Knott, Inc., Appellee, was awarded a contract by the Baltimore County Department of Education for the erection of a junior high school in the amount of $2,118,312. The Knott Company subcontracted the mechanical work to the Kasten Engineering Company and the Kasten Engineering Company in turn sub-subcontracted the insulation phase of its contract to Reid Hayden, Inc., Appellant.

"Article 90, Section 11 of the Annotated Code of Maryland requires that the contractor on a Department of Education contract furnish a labor and material payment bond and the pertinent restriction applicable to a bond to be furnished under subsection 'd' of the Act is as follows:

'No suit shall be commenced after the term of one (1) year after date of final acceptance of the work performed under the contract.'

* * *

"Suit was filed by the Appellant on December 4, 1962. Appellee contends that the building was accepted on July 14, 1961, and that action under the bond was brought too late. Appellant contends that architect's certificate of payment was dated December 20, 1961 (although it covered work up to December 1, 1961) and that work actually continued on the job as late as February, 1962, and that consequently the action was filed timely. Reid Hayden, Inc. completed its work during the summer of 1961 and during the last week of October, 1961, was called back to the job site by Kasten to do corrective work. It was agreed that timely notification was sent (90 days as provided by the Act) by Reid Hayden to the Knott Company of the nonpayment of $2,370 still owed by Kasten to Reid Hayden, the amount for which this suit was brought.

"Kasten got into financial difficulties and was unable to complete all the work required of it under the contract. The Knott Company consequently employed C. George Mills, another mechanical contractor, to complete on behalf of Kasten what is known as a 'punch list.' The County Engineer approved Mills as a subcontractor on October 17, 1961. A punch list is a list of uncompleted items or defectively finished items which is prepared by the supervising engineer or architect and sent to the contractor in the final stages of the job.

"The records of the Mills Company indicated that they began work at the Loch Raven School on October 10, 1961, and they rendered a bill to Knott for work from October through February, 1962, for labor and materials in the amount of $1,969.28, and that they did some minor work in March, May and August of 1962 with bill totaling over $200.

"Morris R. Baker, Construction Engineer for the Board of Education of Baltimore County, testified that a letter was written on July 14, 1961, to the Principal of the newly constructed school stating that final acceptance of the job was made on that date, and that the school was under the usual guarantee period

of one year from that date. Mr. Baker stated that this date was agreed upon by the architect, the general contractor and Mr. Baker, on behalf of the Board of Education. At that time the sum of $152,744 was paid to Henry A. Knott, Inc., the general contractor. Mr. Baker further testified that Article 5 of the Specifications read as follows: 'Final payment shall be due thirty (30) days after work fully completed and contract fully performed.' In compliance with that section on August 8, 1961, Mr. Baker authorized a payment of $99,278 to Henry A. Knott, Inc. From the total contract figure of $2,118,312 this left a balance due to Henry A. Knott, Inc. as of August 8, 1961, of $23,000. Mr. Baker testified that it is customary to have an oral agreement to hold back a minor sum, of what would otherwise be the final payment, until miscellaneous items are cleared up. That there was such an oral agreement with Henry A. Knott, Inc. in this case to hold back the $23,000 sum. When asked if the Board of Education had any right under the contract to hold back a sum of money on the date of final payment, Mr. Baker answered: 'Probably not any right, but we always work out an agreement.'

"Mr. Baker felt the job was substantially completed as of that date. The specifications provide that the architect may withhold money for defective work not remedied. They also provide that final payment shall be due within thirty days after all items have been completed.

"Evidence was introduced by way of a letter from independent engineers on the job to Fisher, Nes & Campbell [the architects] dated December 18, 1961, advising that they had made an eighth final inspection on December 7 and 8 and that a number of minor items were found to be in need of correction, replacement or repair. On December 20 the architect wrote Knott transmitting the list of items requiring attention and verifying an understanding with Knott that it assumed the obligation for correcting these items and that in consideration thereof, he was approving final requisition in the amount of approximately $31,000.

"On the same day, December 20, the architect filed a certificate of payment with the Board of Education of Baltimore County, the certificate reading that the contractor was entitled

to partial payment for the period from August 1, 1961, through December 1, 1961, in the amount of approximately $31,000 and that this payment would pay the contractor in full for the job. The County's check predicated on this certification went to Knott within a matter of days."

Since the appellee lays great stress upon the letter from Baker (stated in the agreed facts to be dated July 14, 1961, but actually dated July 18) to the school principal, we set it forth below:

"July 18, 1961

"Mr. Joseph T. Barlow, Principal
Lock Raven Jr. High School
[Address]

"Dear Mr. Barlow:

"This is to advise that your building was accepted on July 14, 1961 and that it is under the usual guarantee for a period of one year.

"We, therefore, request that you notify this office of any *faults or uncompleted items* so that we might determine whether or not they are due to faulty material, workmanship or operation [italics added].

"Very truly yours

[signed]    Morris R. Baker
WAM
Construction Engineer."

It is readily seen from the above statement of facts that the pivotal language in the case is the "date of final acceptance of the work performed under the contract." The trial judge decided alternative dates for the "final acceptance" thereof: either the date named by Baker in the letter of July 18, 1961, or on December 1, 1961, and, as the action herein was instituted on December 4, 1962, it was too late under either date.

We first consider the date of July 14, 1961, named in the letter from Baker. The statement of facts says that Baker "felt the job was substantially completed as of that date," and testified the date was agreed upon by the architect, the general contractor and himself. The specifications provide that final

payment "shall be due thirty days after the work be *fully* completed and the contract *fully* performed (emphasis added)." They further provide that when the work is ready for "final inspection and acceptance," the architect shall promptly make the inspection, and when he finds the work acceptable under the contract and "the contract fully performed," he shall issue a "final certificate," over his signature, stating the work provided for in the contract "has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the contractor" is due and payable. They further provide that, if after the work has been substantially completed, "full completion" is materially delayed through no fault of the contractor, the owner shall, upon certificate of the architect, "without terminating the contract" make payment of the balance due for that portion of the work "fully completed and accepted," and such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims.

If we assume without deciding, that the specifications authorized the architect to accept the building for and on behalf of the County Board of Education after the work had "been completed," the letter amounted, we think, to no more than a limited or qualified acceptance of a part performance of the work, and this in a most informal manner. The record, as it is presented to us, shows as of July 14 that the architect had issued no certificate stating there had been a "complete" or a "substantially complete" performance of the work. Taken at its best, the record shows no more than a verbal concurrence by the architect with the builder and Baker that a portion of the work had been completed as of that date, and this evidenced by nothing except the letter from Baker to the principal of the school. And the statement of facts shows as of the date of the letter and thereafter certain moneys were withheld from the contractor "until miscellaneous items were cleared up," and labor and materials were furnished as late as February, 1962 (and later), before the work was in reality completed. The agreed upon facts state, "it is the architect's responsibility under the specifications to certify the final payment only after *all* items have been *completed* [emphasis ours]."

Our statute states, that no suit shall be filed later than one year after "date of final acceptance of the work performed under the contract." The cases directly in point relative to our determination here do not seem to be numerous, but those which have been cited to us and those which we have found are uniform in holding that a "final acceptance" to start the time named in the statute running must be unqualified, unconditional and for a complete performance of the contract. In *Farnsworth v. Electrical Supply Co.*, 113 F. 2d 111 (C.A. 5), the Court stated:

> "So long as the United States contends that the contractor must do something more and is holding back an amount, large or small, to secure full performance, there is no 'final settlement' of the contract [within the statute-limiting time for bringing suit within one year of final settlement]."

In the case of *Nesbitt v. Mass. Bonding Co.*, 49 N. E. 2d 765 (Ct. Appls. Ohio), a school building was substantially complete and was certified by the school board at an informal meeting as completed and accepted. Actually this action was taken at a time when there were still some subcontractors completing their work. On an issue as to whether or not subcontractors had furnished contractor's surety with a statement of the amount due within ninety days after "acceptance" of a school building, the Court held that under the wording of the statute acceptance for substantial completion was not sufficient, and that there should have been a formal meeting of the school board with minutes to establish a public record.

Again, in *Yale & Towne v. Aetna*, 166 Atl. 473 (N. J.), a school board passed a resolution to the effect that a contract had been completed and the work had been accepted with the exception of "the meeting room and a few other items." The school board retained $3,500 from the contractor until these items would be completed. The Court on the issue of limitations stated that such acceptance was not within the meaning of the statute and that the statute would only be satisfied upon final, unconditional acceptance. The Court pointed out that to establish the limitation period earlier would be to deprive labor

and material people working on the $3,500 uncompleted items of any rights under the bond.

Another school board case involving the State of New Jersey was that of *Williamsport v. Md. Casualty Co.,* 29 A. 2d 731. The school board passed a resolution accepting the building as being substantially completed and formally accepted the building. This was done after the architect had advised the board that the work was substantially completed with the exception of some painting and other labor and materials having the value of $736 to be done. On an issue involving limitations, the trial court held the limitation period began at the time the school board passed its resolution. The appellate court reversed with the admonition that acceptance had to be final and unconditional. The appellate court further noted that "substantially complete" implies that there remains uncompleted work that would require use of labor and materials. It therefore found that the acceptance was a qualified acceptance and did not comply with the spirit and intent of the statute. See also *Southern Surety Co. v. Schmidt,* 158 N. E. 1 (Sup. Ct., Ohio). We hold that neither the letter of July 18, 1961, nor the action of the gentlemen which produced the letter, was such "a final acceptance of the work performed under the contract" as to be sufficient to start the time named in the statute running.

We turn now to the date of December 1, 1961, as a possible date of "final acceptance of the work performed under the contract." Much of what we have said above applies here also. The trial judge failed to make his reasons for his ruling on this point perfectly clear. His opinion states he found that final acceptance took place either on the date that Baker named in his letter, or "on December 1, 1961 in accordance with the Architect's Certificate," and "it [the architect's certificate] clearly indicates that it covers work only up to December 1, 1961." Apparently, the judge felt that because the architect's certificate of December 20, 1961, stated that the contractor "was entitled to a partial payment for the period from August 1, 1961, through December 1, 1961," this meant that "final acceptance" was as of December 1.

On the contrary, we pointed out above the provision in the

specifications to the effect that when the work is ready for *final* inspection and acceptance, the architect shall make the inspection, and when he finds the work to be acceptable and "the contract fully performed," he shall issue his *final* certificate, stating the work "has been completed and is accepted by him *under the terms and conditions thereof* [emphasis ours]," etc. The agreed-upon facts specifically disclose that the engineers made "an eighth final inspection on December 7 and 8 [1961]," and reported their findings to the architect, who filed "a certificate of payment" on December 20, 1961. It would seem obvious that there could be no "final acceptance" of work as of December 1, when the inspection to determine whether or not the work was to be accepted was not made until December 7 and 8. Moreover, the engineers' report to the architect showed "that a number of minor items were found to be in need of correction, replacement or repair," and, on the same day that the architect filed his certificate of payment, he wrote the contractor transmitting the list of items requiring attention and verifying an obligation on the part of the contractor to correct the same. In addition, other work was done on the building after December 20, 1961. It may well be that under the above circumstances the architect's certificate of December 20, was not such a "final acceptance" as to start the one-year period of time named in Section 11 running. However, it is not necessary for us to determine that question for purposes of this case, so we leave it open. We hold, however, that the "final acceptance of the work performed under the contract" within the meaning of Section 11 did not occur prior to December 20, 1961, the date of the architect's certificate; hence appellant's action was instituted within the time permitted in said section.

> *Judgment reversed, and judgment entered in favor of the appellant against the appellees in the amount of $2,370. Appellees to pay the costs.*