709 A.2d 740

Jack GRESSER et ux.

v.

ANNE ARUNDEL COUNTY, Maryland.

ANNAPOLIS ROAD, LTD.

v.

ANNE ARUNDEL COUNTY, Maryland (Two Cases).

Nos. 20–22 Sept. Term, 1997.

Court of Appeals of Maryland.

Jan. 28, 1998.

Reconsideration Denied March 6, 1998.

Andrew H. Levine (Robert Schulman, Harry Levy, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, on brief); William E. Seekford, Towson, for petitioner.

David A. Plymyer, Deputy County Atty. (Phillip F. Scheibe, County Atty., Anne Arundel County, Annapolis), on brief, for respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW and RAKER, JJ., and JOHN F. McAULIFFE and ROBERT L. KARWACKI, Judges (retired), Specially Assigned.

CHASANOW, Judge.

We granted certiorari to the Court of Special Appeals in these three consolidated cases in which the intermediate ap-

pellate court reviewed a ruling by the Circuit Court of Anne Arundel County (the County) that granted summary judgment in favor of the respondent Anne Arundel County. The summary judgment order, dated June 7, 1995, determined that an Anne Arundel County ordinance regulating the location and operation of adult bookstores, film arcades, and motion picture theaters was "legal" and ordered that the petitioners immediately cease use and operation of an adult film arcade. The relevant facts were summarized by the Court of Special Appeals as follows:

"For several years, [petitioner] Annapolis Road, Ltd. (ARL) operated an adult bookstore on property owned by [petitioners] Jack and Brindel Gresser at 1656 Annapolis Road in Anne Arundel County. It sold books, magazines, and videos containing explicit sexual material. It also operated at that location what are sometimes referred to as 'peep shows'—private booths containing coin-operated video machines that display similar kinds of material. The battle between ARL and the county over the operation of ARL's business extends back at least to 1984. In May of that year, a county detective seized a number of books and magazines from the store that were found to be obscene. ARL was later convicted in criminal court of unlawfully displaying those items.

At some point, the county enacted an ordinance requiring 'peep shows' of the type operated by ARL to have a Class Y license. That ordinance is not now before us, but it appears that some question arose as to whether it was sufficiently specific to pass Constitutional muster. On July 15, 1991, the County Council enacted a second ordinance (Bill No. 68–91) imposing a moratorium on the issuance of Class Y licenses until better standards could be developed. The moratorium took effect August 7, 1991. On July 29, county officials inspected the bookstore and found a number of peep show machines that were not covered by Class Y licenses. ARL closed the business and submitted applica-

tions for the required licenses. In light of the moratorium, however, the county took no immediate action on the applications. That led to a lawsuit by ARL in U.S. District Court challenging the moratorium.

On November 21, 1991, the County Council enacted Bill No. 98–91, purporting to deal in a more specific and comprehensive way with the operation of adult bookstores and adult theaters. The enactment of that ordinance, which repealed the existing law governing Class Y licenses and set forth revised procedures for the issuance of those licenses, thus made ARL's challenge to the moratorium and the earlier ordinance moot. The Federal court dismissed the pending action, along with claims that the moratorium itself constituted a violation of ARL's rights under 42 U.S.C. § 1983. That dismissal was affirmed by the U.S. Court of Appeals for the Fourth Circuit. *Annapolis Road, Limited v. Hagner* (No. 91–1205, 1992 WL 120209, Unpublished Opinion filed June 2, 1992).

In a preamble to Bill No. 98–91, the County Council declared its finding, based on evidence presented to it, that sexually oriented businesses have a harmful effect on the area in which they are located and contribute to neighborhood blight and that they therefore require regulation in order to protect neighborhoods from nuisance and deterioration.

That regulation, as set forth in the ordinance, took two forms. One form was reenactment of the requirement, through the addition of new sections 2–1101 through 2–1113 to art. 16 of the County Code, that 'adult film arcades' have a Class Y license in order to operate. The ordinance defined the term 'adult film arcade' as a place containing one or more display devices that, for commercial entertainment or amusement purposes, show images depicting sadomasochistic abuse, sexual conduct, or sexual excitement. The ordinance set forth procedures and conditions for applying for the license as well as substantive requirements with respect to the operation of an adult film arcade. Operation of an adult film arcade without a Class Y license was made a misdemeanor and was also subject to injunction.

The second form of regulation, which itself was in two parts, was effected through additions to the county zoning laws contained in art. 28 of the County Code. The first aspect of the zoning regulation was the requirement of a special zoning certificate of use for adult bookstores and adult motion picture theaters. Art. 28, § 1–128(a) already contained a general requirement that no premises or structure, other than a single-family residence, could be used or altered until a zoning certificate of use was issued by the Office of Planning and Zoning. The 1991 ordinance added a new provision, § 1–128(e), requiring a zoning certificate of use specifically for an 'adult bookstore' and an 'adult motion picture theater,' both of which terms were defined elsewhere in the ordinance.[1] Adult film arcades were included within the definition of 'adult motion picture theater.' The abstention of the special zoning certificate of use was made a prerequisite to obtaining a Class Y license; a copy of the certificate had to be included with the application for the license.

The second aspect of the zoning regulation was to exclude adult bookstores and adult motion picture theaters entirely from the C1 (Local Retail), C2 (Commercial Office), and C3 (General Commercial) zones, exclude adult motion picture theaters as a *permitted* use in the C4 (Highway Commercial) zone, and restrict those operations as *conditional* uses in the C4 and W3 (Heavy Industrial) districts.[2] Five condi-

---

1.   "Amendments to § 1–101 of art. 28 defined an adult bookstore as a commercial establishment that, as one of its principal business purposes, sells or rents books, magazines, periodicals, or other printed matter, or photographs, motion pictures, videotapes, slides, or other visual representations that depict or describe sadomasochistic abuse, sexual conduct, or sexual excitement, as those terms are defined in Md.Code art. 27, § 416A, or instruments, devices, or paraphernalia designed for use in connection with sexual conduct. An 'adult motion picture theater' was defined in § 1–110 as a place in which films of a similar character as those materials contained in an adult book store are shown."

2.   "Under the preexisting law, 'bookstores' generally were permitted uses in the C1 and C3 zones and 'indoor theaters' or 'motion picture

tions were imposed on the location of those operations in the C4 and W3 districts, namely:

(1) they had to be at least 1,000 feet from the boundary line of any dwelling, library, park, school, playground, child care center, church or other place of worship, or other adult bookstore or adult motion picture theater;

(2) all windows, doors, and other apertures had to be blackened or obstructed to prevent persons on the outside from viewing the interior;

(3) the proprietor, owner, and employees were required to prohibit access by anyone under 18 years of age;

(4) if the business was an adult motion picture theater, it was not to be used for the display of obscene films or other performances; and

(5) if it was an adult motion picture theater, it had to have the off-street parking required for theaters generally.

Any existing adult bookstore or adult motion picture theater that would not be in compliance with the new requirements was allowed to continue as a nonconforming use for one year after notice from the Office of Planning and Zoning. By Bill No. 101–92, enacted and signed into law on December 8, 1992, that period was reduced to six months.

ARL chose not to apply for the newly authorized Class Y license but instead reopened its store without a license. On December 4, 1992, after discovering that the business had been reopened, the county filed suit against ARL, contending that it was operating an adult film arcade without a Class Y license. It asked that the operation be enjoined until the license was obtained. The court entered an *ex parte* injunction, followed, on December 18, 1992, by an interlocutory injunction, restraining ARL and its employee

---

theaters' were permitted uses in the C1, C2, C3, and C4 zones. Bill No. 98–91 removed the adult operations from the C1, C2, and C3 zones and as a permitted use in the C4 zone by excluding adult bookstores from the scope of 'bookstore' and excluding adult motion picture theaters from the scope of 'indoor theater' and 'motion picture theater.' "

from operating an adult film arcade during the pendency of the litigation. That action has resulted in Appeal No. 460.

In June, 1993, ARL filed an action against the county for declaratory and injunctive relief. It acknowledged that its business involved the display, sale, and rental of books, magazines, and videotapes, a portion of which included themes of a sexual nature, although it denied that any of those materials contain descriptions or depictions of sado-masochistic abuse, sexual conduct, or sexual excitement. ARL averred that its operation was in a C3 zone, that its attempts to obtain a Class Y license had been 'thwarted by the actions of the County and the Department of Inspection and Permits,' that it had attempted to register the operation as a lawful nonconforming use but was informed that the nonconforming use must cease on June 16, 1993, that the county had notified every owner of land on which adult businesses are operated that those operations must cease, that the licensing and zoning schemes embodied in the ordinance 'leaves no existing adult businesses in Anne Arundel County,' and that there was no factual basis for such a regulation.

In light of its allegation that none of the materials it displayed contained descriptions or depictions of sadomasochistic abuse or sexual conduct or excitement, ARL asked for a declaratory judgment that it was not subject to Ordinances 98–91 and 101–92. To the extent it *was* subject to those ordinances, it asked for a declaratory judgment that they were 'unconstitutional' for a variety of reasons. ARL claimed that the ordinances were invalid because they were impermissibly enacted as emergency legislation and involved more than one subject matter, presumably in contravention of the County Charter. It also averred that they were unconstitutional because (1) they sought to regulate by licensing and zoning requirements conduct subject to criminal penalties, (2) the Class Y licensing fee of $2,500 or $300 for each display device imposed a content-based fee unrelated to the proven cost necessary to regulate the activity, (3) the ordinances constituted an unlawful prior restraint on

protected speech with insufficient guidelines to govern the issuance of a zoning certificate of use for adult businesses, (4) they sought to regulate the configuration, lighting, and content of adult film arcades without any basis or reason, (5) they failed to allow for reasonable alternative avenues of communication, (6) they did not further any specific governmental interest, and (7) they were not narrowly tailored to affect only the articulated unwanted secondary effects of adult businesses and thus contained greater restrictions than were necessary to achieve the desired results.

As ancillary relief, ARL asked for an injunction to restrain county officials from taking any action to enforce the ordinances against its business. That case has produced Appeal No. 462.

On August 5, 1993, the county filed the third of the three actions, against the Gressers. The county averred that the Gressers were allowing their property, located in a C3 zone, to be used as an adult bookstore and adult motion picture theater, which uses are limited to C4 and W3 zones as conditional uses. The ability of the Gressers to continue those uses as lawful nonconforming ones expired, said the county, on June 16, 1993, and it therefore asked that the Gressers be enjoined from using the property for any use not allowed in a C3 zone, and specifically as an adult bookstore or adult motion picture theater. That action has produced Appeal No. 461.

On August 12, 1993, the court granted an interlocutory injunction in the second case (No. 462), restraining the county from taking any action to compel ARL to cease operation of its business, pending the action and subject to further order of the court. In October, the court consolidated Cases 2 and 3 (Nos. 462 and 461). The first action (No. 460), in which the court had enjoined ARL from operating an adult film arcade without a Class Y license, proceeded for a time on its own.

On November 3, 1993, this Court affirmed the interlocutory injunction issued in Appeal No. 460, finding no merit in ARL's seven claims of unconstitutionality and charter viola-

tions. The Court of Appeals denied ARL's petition for *certiorari* on March 10, 1994; subsequently, the U.S. Supreme Court also denied *certiorari.* In December, 1994, the county enacted yet another ordinance (Bill No. 39–94), which amended § 1–101 of art. 28 to exclude a commercial establishment from the definition of 'adult bookstore' if less than 20% of its merchandise on display consists of the books, magazines, devices, or other material specified in the definition or less than 20% of its usable floor area is used for the display of those items.

At some point thereafter, No. 460 was consolidated with the other two cases, and all three were heard in the circuit court on cross motions for summary judgment. In light of the 1994 ordinance and the fact that less than 20% of ARL's stock consisted of the specified items, the county urged that the operation no longer qualified as an adult bookstore and that those aspects of the cases concerning the operation of an adult bookstore were therefore moot.

On June 7, 1995, the court filed an opinion and order granting the county's motion for summary judgment and ordering that ARL and the Gressers immediately cease the operation of an adult film arcade at the Annapolis Road location. The court noted the county's concession that ARL no longer qualified as an adult bookstore and that its zoning enforcement action was therefore moot, at least as to the bookstore, but decided to address the validity of the zoning provisions anyway. In fact, that is the only aspect of the dispute that the court did address in its opinion; it said very little about the licensing provisions. Nonetheless, the court concluded its opinion with a finding that the entire ordinance was valid and, in its order, directed that [petitioners] immediately cease the operation of the adult film arcade. The court issued no specific ruling regarding the bookstore operation."

*Annapolis Road v. Anne Arundel County,* 113 Md.App. 104, 107–114, 686 A.2d 727, 729–32 (1996).

The circuit court summary judgment opinion and order contained the following conclusion:

"In light of the foregoing, this Court finds that the challenged County ordinances are legal and that Defendants[ ] are operating an adult film arcade on the Premises without a[C]lass Y license or zoning certificate of use in violation of the Anne Arundel County Code."

Less than one month after the circuit court's opinion and order, the United States Court of Appeals for the Fourth Circuit filed en banc opinions declaring parts of adult bookstore ordinances adopted in Harford and Prince George's Counties invalid. *11126 Baltimore v. Prince George's County, Md.,* 58 F.3d 988 (4th Cir.), *cert. denied,* 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995); *Chesapeake B & M, Inc. v. Harford County, Md.,* 58 F.3d 1005 (4th Cir.), *cert. denied,* 516 U.S. 1010, 116 S.Ct. 567, 133 L.Ed.2d 492 (1995). Petitioners, ARL and the Gressers, then filed a motion with the circuit court to alter or amend its judgment based on these rulings. The court denied the motion. The County, however, recognizing the impact of these Fourth Circuit decisions, conceded in the Court of Special Appeals that " 'the licensing requirement for adult film arcades codified as Article 16, §§ 2–1101 through 2–1113 of the County Code, and the requirement for a special zoning certificate of use for adult film arcades codified at Article 28, § 1–128(e), both enacted by Bill No. 98–91, are unenforceable.' " *Annapolis Road,* 113 Md.App. at 115–16, 686 A.2d at 733. The intermediate appellate court held that, "for the reasons assigned by the Fourth Circuit Court in the aforementioned cases, the provisions conceded by the county to be unenforceable are, indeed, unenforceable." *Annapolis Road,* 113 Md.App. at 127, 686 A.2d at 738. This concession and the antecedent Fourth Circuit cases should have resulted in the vacating of the circuit court's injunction since it was conceded that the only two clearly enunciated violations by the defendants were not enforceable. Instead, the Court of Special Appeals affirmed the injunction by finding violations of other aspects of the ordinances. The intermediate appellate court also held the ordinances constitutional for reasons that may not have been raised below and may not have been decided by the circuit court's summary judgment opinion and

order. We must reverse the intermediate appellate court's affirmance of the injunction and, because the case must go back to the trial court, we will also remand to that court for any additional arguments on the constitutionality of the ordinances at issue.

It is a general rule that in appeals from the granting of a motion for summary judgment, absent exceptional circumstances, Maryland appellate courts will only consider the grounds upon which the lower court granted summary judgment, and if those grounds were erroneous, we will not speculate that summary judgment might have been granted on other grounds not reached by the trial court. "Where the judgment appealed from is entered on motion for summary judgment, the appellate court ordinarily will review only the issue decided by the circuit court." *T.H.E. Ins. v. P.T.P. Inc.,* 331 Md. 406, 409 n. 2, 628 A.2d 223, 224 n. 2 (1993), *see also Boyer v. State,* 323 Md. 558, 588, 594 A.2d 121, 136 (1991); *Orkin v. Holy Cross Hospital,* 318 Md. 429, 435, 569 A.2d 207, 210 (1990); *Three Garden v. USF & G,* 318 Md. 98, 107–08, 567 A.2d 85, 89 (1989). Since the only two ordinance violations mentioned as a basis for the lower court's summary judgment injunction were determined not to constitute permissible bases for an injunction, the appropriate appellate procedure would be to reverse and remand for further proceedings. Thus, because the Court of Special Appeals affirmed the granting of an injunction for reasons not decided by the trial judge and apparently not raised below, we must vacate this decision and order the case remanded to the trial court for further hearing on the request for an injunction.

The case should also be remanded to the trial court for a further hearing on the constitutionality of the Anne Arundel County ordinances. It is unclear what the trial judge's opinion encompassed when he rather summarily "declared" that the Anne Arundel County ordinances were "legal." He was obviously only ruling on the arguments made by the parties, so the effect of his decision was to determine that the ordinances were not invalid for any of the reasons raised. We

suggest that when upholding the constitutionality of statutes or ordinances, where there are several constitutional challenges, trial judges should do more than simply declare that the statutes or ordinances are constitutional. That all encompassing pronouncement is generally not helpful or even accurate because the judge is ordinarily considering only the constitutional challenges raised by the parties. What the trial judge in the instant case was probably holding and should have articulated was that the ordinances at issue were not unconstitutional for any of the reasons raised by the parties. It is obvious from the record that several additional constitutional challenges were raised on appeal and ruled on by the Court of Special Appeals.

The first reason why remand to the trial court is necessary is that the Fourth Circuit in the previously mentioned cases struck down parts of the statutory scheme found "legal," and the intermediate appellate court as well as all of the parties agree that the only articulated reasons given by the trial judge to issue the injunction in the instant cases are invalid. Second, there are several issues that were decided by the Court of Special Appeals that were not decided by the trial judge, and the parties should have further opportunity to develop the record and present their arguments in the trial court.

For example, one of the ordinances at issue, County Code Art. 28, § 3–403, classifies adult bookstores and adult motion picture theaters as conditional uses in the C4–Highway Commercial District and the W3–Heavy Industrial District. The County apparently has no written or established procedures for obtaining approval of a conditional use. The Court of Special Appeals noted this and stated "it is not clear to us what the actual process is for obtaining approval as a conditional use. There are extensive provisions relating to the procedure for obtaining a special exception, but the zoning law is silent with respect to conditional use approval." *Annapolis Road*, 113 Md.App. at 132–33, 686 A.2d at 741. This amorphous administrative procedure is coupled with the requirement that an adult motion picture theater "was not to be used for the display of obscene films or other performances." The

Court of Special Appeals agreed with the county that condition four was an objective condition and that the issuance of a zoning certificate of use was simply a ministerial act. "If the applicant's use is authorized by the zoning ordinance—if the facility is in a C4 or W3 zone and the five objective conditions are satisfied—the certificate must be granted." *Annapolis Road,* 113 Md.App. at 134, 686 A.2d at 742. The intermediate appellate court may not have considered that in deciding whether a theater is displaying an obscene film for the purposes of satisfying condition four, a county official might be given discretion to determine what is obscene and on the basis of that determination deny a conditional use certificate. Such a grant of discretion might be unconstitutional. *C.f. Jakanna v. Montgomery County,* 344 Md. 584, 600–01, 689 A.2d 65, 72 (1997). We should have a record clearly establishing whether there is any discretion given to a county official to decide not to issue a conditional use permit because in his or her opinion condition four is not met. Without expressing any opinion on the validity of the ordinances or the issues raised by petitioners, we shall vacate the injunction since the only grounds articulated for granting summary judgment and issuing an injunction against the petitioners are conceded and found to be erroneous, and we shall remand the case to the intermediate appellate court with instructions to remand to the trial court for a full hearing on the constitutionality of the ordinances and whether an injunction should be issued.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE INJUNCTION AND DECLARATORY JUDGMENT AND REMAND THIS CASE TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.*