793 A.2d 579

## HAGERSTOWN ELDERLY ASSOCIATES LIMITED PARTNERSHIP

v.

## HAGERSTOWN ELDERLY BUILDING ASSOCIATES LIMITED PARTNERSHIP, H.B. Alexander, Inc., and Seaboard Surety Company.

Houck & Company, Inc.

v.

Dryvit Systems, Inc.

No. 29, Sept. Term, 2001.

Court of Appeals of Maryland.

March 12, 2002.

Paul B. Bech (Bazelon, Less & Feldmaln, P.C., Philadelphia, PA; Leslie A. Powell of Law Offices of Leslie Powell, Frederick), for Appellants/Cross–Appellees.

Scott Patrick Burns (James C. Fraser of Tydings & Rosenberg, LLP, on brief), Baltimore, Patriia M. Thornton (Bacon, Thornto & Palmer, LLP, on brief), Lanham, (Russell R. Marks, Gilbert, Marks & Digirolamo, P.A., Hagerstown, on brief; Thomas A. Beckley, John G. Milakovic of Beckley & Madden, Harrisburg, on brief) (John J. O'Neill, Jr., of Rockville, on brief), for Appellees/Cross–Appellants.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, HARRELL, BATTAGLIA and KARWACKI, ROBERT L. (Retired, specially assigned), JJ.

RAKER, J.

Appellant, Hagerstown Elderly Associates Limited Partnership, is the owner of a public housing facility in Hagerstown, Maryland known as Elizabeth Court. On or about October 14, 1995, a portion of an exterior wall of the eleven-story building fell to the ground. A year later, on October 16, 1996, appellant filed suit in the Circuit Court for Washington County against appellees Hagerstown Elderly Building Associates (HEBA), the contractor that erected the building, and Seaboard Surety Company (Seaboard), the surety on the performance bond filed by HEBA in connection with that construction, to recover the expense of restoring the building and correcting what appellant regarded as deficient work. Vari-

ous subcontractors were eventually added as third-party defendants.

The Circuit Court granted summary judgment to appellees on the grounds that (1) the action against the contractor, HEBA, was barred by the ten-year statute of repose codified in Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 5–108(b) of the Courts and Judicial Proceedings Article [1] and (2) the action against the surety, Seaboard, was barred by the twelve-year statute of limitations codified in § 5–102. We granted certiorari on our own initiative, prior to any decision by the Court of Special Appeals, to review the issues presented in those rulings.

We find no error in the Circuit Court's granting of summary judgment to HEBA on Count I and shall, therefore, affirm that judgment. We find, however, that the court erred in granting summary judgment to appellees on Count II and shall, therefore, reverse that judgment.

## I.

Elizabeth Court is a public housing facility for elderly and disabled persons. Construction of the project was financed by the State Community Development Administration (CDA) and the Maryland Housing Fund (MHF), using funds provided by the United States Department of Housing and Urban Development. The construction contract between appellant and HEBA, dated October 22, 1982, required HEBA to provide a payment and performance bond assuring appellant and CDA that the contractual work would be completed, and, in conformance with that obligation, appellees issued such a bond, running jointly to appellant and CDA. The bond obligated appellees, jointly and severally, to appellant and CDA in the amount of $4,284,000—the construction contract price—for the prompt and faithful performance of the contract, but provided that any suit under the bond must be instituted before the

---

1. Unless otherwise indicated, all subsequent statutory references are to Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.), Courts and Judicial Proceedings Article.

expiration of two years "from the date on which final payment under the Contract falls due."

HEBA subcontracted the installation of the exterior wall system to Novinger's, Inc. That system, referred to by the parties as an exterior insulation finish system (EIFS), consisted of multiple layers of different materials intended to provide thermal insulation and protection against infiltration of the elements.

The City of Hagerstown conducted a final inspection and issued a Use and Occupancy Permit for the building on December 16, 1983. HEBA and the architect filed a Certificate of Substantial Completion on December 21, 1983. On the same day, appellant granted permission for the occupancy of all 110 units of the project. Pursuant to the Certificate of Substantial Completion, HEBA was presented with a "punch list" of final items to be corrected or completed, for which, in accordance with the construction contract, part of the final payment was placed in escrow. On February 28, 1984, HEBA advised the architect that it had completed all of the items listed on the architect's final inspection report and requested that the architect reinspect those items so that no escrow would be required at final closing. CDA applied to MHF for insurance of the advance of mortgage proceeds on October 10, 1984. On October 26, 1984, MHF approved an advance of $316,818.00. A final loan closing, for the release of the remaining funds, was set for and took place on November 1, 1984. Final payment was made to HEBA the following day, on November 2, 1984.

On October 14, 1995, an unusually severe storm hit Hagerstown, during which a large section of the exterior wall surface of the building blew out and fell to the ground. After conducting an investigation, appellant concluded that the incident occurred because of faulty construction of the EIFS system, causing the wall surface to debond and eventually fall. Appellant claimed that it had no knowledge, and no reason to know, of the faulty construction until the actual collapse. On October 16, 1996, appellant filed this suit, seeking in Count I of its

complaint to recover against HEBA for breach of contract and in Count II to recover against HEBA and Seaboard under the performance bond.

The Circuit Court for Washington County granted summary judgment in favor of appellees on both counts of the complaint. With respect to Count I, the court found that the action was barred by statute of repose contained in § 5–108(b). With respect to Count II, the court declined to apply the two-year statute of limitations provided for in the performance bond, holding that, by virtue of Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–104 of the Insurance Article, that provision was against public policy and void.[2] The court concluded that the applicable period of limitations was that set forth in § 5–102(a)(2)—namely, that an action on a bond shall be filed within twelve years of accrual of the cause of action. Although the court found the two-year limitations period set forth in the bond unenforceable, it looked to that provision to determine the parties' intent as to when the accrual time commenced, which was "the date on which final payment under the Contract falls due." Although the court consulted Article 3C of the contract and § 9.9.2 of the General Conditions, it ultimately found dispositive CDA's October 10, 1984 request for final payment from MHF of the "punch list" items, in which CDA declared its belief that that amount was then "payable." As the suit was filed twelve years and six days after that date, the court held Count II to be barred by limitations.

## II.

In this appeal, appellant urges that (1) the statute of repose set forth in § 5–108(b) does not bar the action in Count I

---

**2.** Maryland Code (1957, 1998 Repl.Vol., 2001 Supp.) § 12–104(a) of the Insurance Article states that a provision in an insurance or surety contract that sets a shorter time to bring an action under that contract than that required by the law of the State when the contract was issued or delivered is against state public policy and void. Section 12–104(b) provides that a state court may not give effect to such an illegal provision and that a defense to liability under the contract may not be based on the shorter limitations period.

because it does not apply to breach of contract actions or claims arising out of injury to the property containing the allegedly defective and unsafe condition and (2) the Circuit Court erred in fixing the final payment due date for purposes of the action on the performance bond as October 10, 1984, rather than November 1, 1984. Appellant contends that § 5–108(b) is not applicable for two, somewhat overlapping, reasons. First, appellant claims that the section is directed only at tort actions and not at actions based on breach of contract. The language, it urges, "is expressly couched in the classic terminology of tort, not contract." Second, it argues that the section applies "only to actions either for personal injury or for damages to real or personal property *other than the property containing the defective and unsafe improvement.*" (Emphasis added). It posits that the section "expressly refers only to situations where (a) a defective and unsafe 'condition' of an improvement to real property *separately* causes (b) a *separate* injury to *other* real or personal property." In this setting, it avers, the appropriate limitation period is that set forth in subsections (c) and (e)—three years from when the damage occurred, from when the wall collapsed.

With respect to Count II, the action on the performance bond, appellant concedes that the trial court was correct in applying the twelve-year statute of limitations and in finding that the limitations period commenced when final payment to HEBA fell due. Appellant's only disagreement is over when the final payment fell due. Appellant urges that final payment did not fall due until either October 26, 1984, the date that MHF approved the advance of mortgage proceeds, or November 1, 1984, the date of the final loan closing, both dates being within the twelve-year period prior to commencement of the action. Appellant argues that there were essentially two conditions precedent to final payment: CDA's approval (which it claims occurred on October 10, 1984, when CDA stated in its application for insurance of advance payment that the sum was "now payable"), which itself was conditioned on the prior approval of MHF (which occurred on November 1, 1984).

### III. Count I: Contract Action Against HEBA

 Count I of appellant's complaint, captioned Breach of Contract, alleges that appellant and HEBA entered into a construction contract that obligated HEBA to design and construct the building in accordance with the plans, specifications, and other contract documents, that HEBA warranted, either expressly or impliedly, that its performance would be full, complete, and free from defects, and that the defects sued upon, including the deterioration of the east wall surface, were the direct result of latent defects in the design and construction of the building and the failure of HEBA to perform its work in accordance with the contract, its warranties, and proper construction practices.

Section 5–108 sets forth several forms and degrees of limitation on actions for damages arising from defective and unsafe improvements to real property. Section 5–108(a), which we have regarded as a statute of repose rather than one of limitations, places an absolute twenty-year period on actions for damages for wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe conditions of an improvement to real property. No such cause of action accrues when the defective and unsafe condition of the improvement occurs more than twenty years after the date that the entire improvement first became available for its intended use. Section 5–108(b), with which we deal here, uses the same format and the same language to impose a ten-year period of repose on actions against an architect, professional engineer, or contractor. It provides:

"Except as provided by this section,[3] a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal proper-

---

**3.** Section 5–108(d) provides an exception to the twenty-year period set forth in subsection (a) and the ten-year period set forth in subsection (b) for certain actions based on injuries arising from exposure to asbestos products. That exception does not apply in this case.

ty, resulting from the defective and unsafe conditions of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use."

In addition to these periods of repose, § 5–108 also contains a statute of limitations. Subsection (c) provides that, upon accrual of a cause of action referred to in subsections (a) and (b), an action shall be filed within three years. Subsection (e), in turn, states that "an action for an injury described in § 5–108 accrues when the injury or damage occurs."

It is clear that Count I of appellant's complaint, which is against contractors and was based on the defective and unsafe condition of an improvement, was not filed within ten years after the date that the entire improvement—the building—first became available for its intended use in December, 1983, when the City of Hagerstown's final inspection was completed, a certificate of occupancy was issued, CDA's permission to occupy all units was issued, and the first occupancy by a tenant occurred. If § 5–108(b) applies, therefore, it would bar the action.

The question of whether § 5–108(a) or (b) is limited in its application to tort actions or applies as well to claims for breach of contract or breach of warranty was essentially answered in *Rose v. Fox Pool,* 335 Md. 351, 643 A.2d 906 (1994). In that case, the homeowners had purchased an in-ground swimming pool from the respondent, which, pursuant to the contract, had installed the pool in their yard. The installation occurred in 1971. In 1991, the petitioner, a guest of the homeowners, injured himself when he struck his head during a dive into the pool. Arguing that the pool was defectively designed and was unsafe for diving, the petitioner sued the respondent for negligence, strict liability, and breach of warranty. The respondent defended on the basis of § 5–108(a)—the twenty-year statute of repose applicable to defendants other than architects, professional engineers, and contractors—and obtained summary judgment. The principal issues before us were whether (1) § 5–108 applied to manufac-

turers of consumer goods in product liability actions, and (2) there was a genuine dispute of fact whether twenty years had, in fact, passed between the time that the improvement first became available for its intended use and the petitioner's injury.

In resolving the first issue, we concluded that, under subsection (a), a defendant's immunity from suit after twenty years did not depend on the defendant's occupation or on the type of service it provided. Having concluded that § 5–108(a) covered actions against defendants like the respondent, we found the section applicable not only to the negligence and strict liability claims, but to the breach of warranty claim as well. We remanded the case for further proceedings only because of our conclusion, with respect to the second issue, that there was a legitimate dispute of material fact as to whether the action was brought within the allowable twenty-year period.

■ As we indicated, subsections (a) and (b) are almost identically worded in substance, the only significant difference between them being that, with respect to architects, professional engineers, and contractors, the action must be brought within ten, rather than twenty, years. If subsection (a) applies to breach of warranty actions, perforce so does subsection (b).

The United States Court of Appeals for the Fourth Circuit has reached the same conclusion with respect to § 5–108. In *Hartford Ins. Co. v. American Automatic Sprinkler*, 201 F.3d 538 (4th Cir.2000), an action was brought by the appellant, an insurance company subrogee, for damages done to a hotel from the bursting of a water standpipe installed by the appellee. The pipe, which was part of the overall sprinkler and fire-protection system, had been installed in 1982. The appellee had done some repair work to the sprinkler system in January 1996, and the bursting and flooding occurred within a month thereafter. The complaint, which was based on both the initial installation work in 1982 and the repair work in

1996, relied on theories of negligence, strict liability, and breach of contract under Maryland law. *See id.* at 540.

The principal issue in the case, which reached the appellate court from the granting of summary judgment, was whether § 5–108(b) applied to a subcontractor. The court ruled that it did apply and affirmed the judgment of the District Court with respect to the claims based on the 1982 work. That judgment included a barring of the claim based on breach of contract.[4] *Cf. First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862, 864–65 (4th Cir.1989) (applying § 5–108(a) to a breach of warranty action by a property owner against the manufacturer of asbestos-containing acoustical plaster when the action was filed prior to the enactment of § 5–108(d)).

Although many States have adopted statutes of repose with respect to actions based on defective improvements to real property, the statutes vary in terms of what they cover, who is protected, and the time periods allowed. Some statutes expressly exclude breach of contract actions. *See, e.g.*, D.C.CODE ANN. § 12–310 (2001); N.M. STAT. ANN. § 37–1–27 (Michie 2001). Others expressly include breach of contract claims. *See, e.g.*, ALA.CODE § 6–5–218 (2001); CONN. GEN.STAT. § 52–584a (2001). In those states that have statutes similar in wording to § 5–108, there appears to be a split over whether the statute applies to contract claims.

In *Kocisko v. Charles Shutrump & Sons Co.*, 21 Ohio St.3d 98, 488 N.E.2d 171 (1986), in an action for damages due to the

---

4. In *Hartford Ins. Co. v. American Automatic Sprinkler*, 201 F.3d 538 (4th Cir.2000), as in *Rose v. Fox Pool*, 335 Md. 351, 643 A.2d 906 (1994), the warranty at issue dealt with the condition of the improvement at the time that it was completed. The warranty was not a continuing one of future performance, where it might not be known until the end of the warranty period whether a breach had occurred. *See Joswick v. Chesapeake Mobile*, 362 Md. 261, 765 A.2d 90 (2001). Therefore, we need not address the question of whether § 5–108 would serve to bar an action based on a warranty that was not, in fact, breached until after the ten- or twenty-year period provided for in the statute or, if it did have that effect, whether the provision would be constitutionally invalid.

installation of a leaky roof, the court held that the statute applied only to tortious conduct. A similar result was reached in *Kittson Cty. v. Wells, Denbrook & Assoc., Inc.*, 308 Minn. 237, 241 N.W.2d 799 (1976), in which the court noted that, although there was no legislative history available to indicate the purpose of the statute, it assumed that the statute was a response to the expansion of liability from elimination of the privity of contract doctrine and found it logical to confine the law to tort actions by persons not in privity with the defendant.

In contrast, in *Dallas Mkt. Ctr. v. Beran & Shelmire*, 824 S.W.2d 218 (Tex.App.1991), the court rejected the notion that the statutes of repose—one for architects and engineers and one for contractors—applied only to tort claims, noting:

"The statutes of repose demonstrate legislative recognition of the protracted and extensive vulnerability to lawsuits of building professionals and contractors. We face this same evil with respect to contract claims based on negligent performance as previously addressed in tort cases. The only limitation in both statutes of repose is that the actions arise out of a defective or unsafe condition of the real property."

*Id.* at 222 (internal citations omitted).

The view of the Texas Court of Appeals in *Dallas Market* is much more consistent with our holding in *Rose* and the holdings of the United States Court of Appeals for the Fourth Circuit in *Hartford Insurance* and *First United.* As we made clear in *Rose*, §§ 5–108(a) and (b) were intended to protect architects, engineers, contractors, and others involved in the construction industry from being hauled into court by reason of latent defects that did not become manifest until years after the completion of construction. In providing that protection, the General Assembly carefully weighed the competing interests and struck the balance noted—ten years for architects, engineers, and contractors and twenty years for others. That protection would be fragile, indeed, if it depended on how a plaintiff chooses to frame and plead its cause of action. As

noted, most cases of this nature involve claims in both tort and contract, all emanating from the assertion that the defendant was in some way negligent in the performance of its contractual duties. The issue should be whether, if the injury or damage arises from the defective and unsafe condition of an improvement to real property, that injury or damage occurs more than ten (or twenty) years after "the date the entire improvement first became available for its intended use," and not whether the claim is pleaded as one in contract or tort.

Section 5–108(b) speaks of actions for damages when personal injury "or injury to real or personal property" results "from the defective and unsafe condition of an improvement to real property." We can find no justification, in either the wording or the purpose of the statute, for drawing a distinction between situations in which the latent defective condition has caused damage to property other than the property that was the subject of the contract and those in which it has caused damage to the property containing the defective condition. The clear intent of § 5–108(b) was to terminate liability after ten (or twenty) years for the damage caused by the latent defect to any property. Therefore, appellant's breach of contract claim is barred by the ten-year statute of repose codified in § 5–108(b), and the Circuit Court's grant of summary judgment to HEBA on Count I of the complaint is affirmed.

IV. Count II: Action on the Performance Bond

■ The Circuit Court was correct in substituting the twelve-year statute of limitations contained in § 5–102(a)(2) for the two-year limitation contained in the performance bond, and none of the parties dispute that finding in the case before us. The sole disagreement between the parties, with respect to the application of § 5–102(a)(2) to appellant's performance bond claim, is when the final payment was "due" under the Construction Contract, because that was the triggering event for the statute of limitations on the performance bond action.

Section 3 of the Construction Contract between the parties called for monthly progress payments to be made to HEBA,

"[s]ubject to the approval of CDA," in an amount equal to the value of acceptably completed work, plus the value of materials and equipment delivered to the construction site and properly stored. Section 3C of the Construction Contract, which dealt specifically with final payment, stated that the balance due to HEBA "shall be *payable* upon the expiration of 30 days after the work hereunder is fully completed" (emphasis added), provided that all required government inspections had been completed, all required government approvals had been issued, and CDA had issued permission to occupy all units of the project.

Section 14 of the Construction Contract contained provisions dealing with the escrow of funds for incomplete items. In relevant part, it provided that, when CDA issued its final project report declaring construction complete, it could designate certain specific improvements as incomplete, along with an estimated cost for the completion of each such item (the "punch list" items). The Contract provided that CDA would require, as a condition of final loan closing, that the parties enter into an escrow agreement, pursuant to which appellant would withhold from the final payment and deposit in escrow an amount equal to twice the CDA estimate of the cost of the incomplete items. Under § 14, HEBA would forfeit any claim or interest in the escrowed funds allocable to any punch list item still incomplete at the time specified in the escrow agreement.

Section 9.9.2 of the General Conditions of the Construction Contract stated, in relevant part, that neither the final payment nor the remaining retained percentage would become due to HEBA until HEBA submitted to the architect an affidavit that all bills connected with the work had been paid and the consent of the surety to final payment, as well as certain other assurances, releases, or satisfaction that might be required by appellant.

The critical date for determining the commencement of the statute of limitations on appellant's performance bond claim is the date that the final payment fell due. The mere fact that

CDA declared that the sum requested was *payable* on October 10, 1984 does not mean that the final payment was *due* on that date. Black's Law Dictionary defines a "payable" amount as a sum of money "that is to be paid." BLACK'S LAW DICTIONARY 1150 (7th ed.1999). It goes on to explain: "An amount may be payable without being due. Debts are commonly payable long before they fall due." *Id.*

Pursuant to the Construction Contract between the parties, the final payment was not due until the final loan closing, which occurred on November 1, 1984.[5] The contract specifically contemplated that a portion of the "final payment" would be escrowed at the closing to cover the cost of incomplete items, and, in fact, more than $17,000 was withheld and put into escrow at the final loan closing. Therefore, final payment could not have been made any earlier than the closing on November 1st.

Support for this interpretation can be found in *Perlmutter v. Minskoff,* 196 Md. 99, 75 A.2d 129 (1950). In that case, a subcontractor brought a breach of contract suit for final payment under a construction contract, claiming that it was entitled to payment for substantial completion of the terms of the contract. The contracts at issue in that case provided that the final ten percent payments were to be paid to the subcontractor upon approval by the Federal Housing Administration. *See id.* at 107, 75 A.2d at 132. This Court upheld the trial court's dismissal of the contract claim, explaining: "Substantial compliance does not fulfill the terms of an agreement. Of course, under the terms thereof, there must be full compliance before the final amount *payable under the contracts* is *due.*" *Id.* (emphasis added).

This case somewhat parallels the earlier decision by this Court in *Bal. Co. Dep't v. Henry A. Knott,* 234 Md. 417, 199

---

**5.** As indicated *supra,* Paragraph 9.9.2 of the General Conditions of the Construction Contract specifically dictated that the final payment would not "become due" until the Contractor had submitted an affidavit attesting that all outstanding debts had been paid, that the surety had consented to final payment, and that all releases and satisfactions had been completed.

A.2d 369 (1964). That case involved a suit by a contractor to recover on a school construction contract. The trial court dismissed the suit on the basis of the statute of limitations, finding that a letter from the construction engineer for the Board of Education constituted a "final acceptance" of the building, thereby triggering the running of the one-year statute of limitations for school construction contract suits. *See id.* at 419–20, 199 A.2d at 370–71. This Court reversed, holding that a "final acceptance" had to be unqualified and unconditional and did not take place until the contract had been completely performed, reasoning that final settlement could not take place until full payment had been made. *See id.* at 424, 199 A.2d at 373.

By the same token, the CDA's certification in this case that the remaining sum was "payable" on October 10th did not automatically make the final payment *due* on that date.[6] Therefore, the Circuit Court erred in granting summary judgment to appellees on Count II, the performance

---

6. In its brief, HEBA also maintains that, as a substantive matter, no action based on breach of warranty lies under the performance bond. As it granted summary judgment based solely on the statute of limitations, the Circuit Court did not address that issue. Appellate courts generally will not address matters that were not raised or decided in the trial court. *See Davis v. DiPino,* 337 Md. 642, 655–56, 655 A.2d 401, 407–08 (1995). Absent exceptional circumstances, an appellate court will review a grant of summary judgment only upon the grounds relied upon by the trial court. *See PaineWebber v. East,* 363 Md. 408, 422, 768 A.2d 1029, 1036 (2001); *Bishop v. State Farm,* 360 Md. 225, 234, 757 A.2d 783, 787–88 (2000); *Gresser v. Anne Arundel County,* 349 Md. 542, 552, 709 A.2d 740, 745 (1998); *Geisz v. Greater Baltimore Medical,* 313 Md. 301, 314 n. 5, 545 A.2d 658, 662 n. 5 (1988). When an appellate court reviews a trial court's grant of summary judgment and finds its basis to be erroneous, the appellate court will not ordinarily undertake to sustain the judgment by ruling on another ground not ruled upon by the trial court. *See Bishop,* 360 Md. at 234, 757 A.2d at 787–88; *Gresser,* 349 Md. at 552, 709 A.2d at 745; *Three Garden v. USF & G,* 318 Md. 98, 107–08, 567 A.2d 85, 89–90 (1989); *Geisz,* 313 Md. at 314 n. 5, 545 A.2d at 662 n. 5. The proper procedure, upon reversing a trial court's grant of summary judgment, is to remand to the trial court for further proceedings. *See Bishop,* 360 Md. at 234, 757 A.2d at 787; *Davis,* 337 Md. at 656, 655 A.2d at 408. In view of the fact that we are

bond claim, on the basis that it was not timely filed within the twelve-year statute of limitations codified in § 5–102(a)(2).

*JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SHARED EQUALLY BETWEEN APPELLANT AND APPELLEES.*

BELL, C.J., joins this opinion only with respect to Parts I, II, and IV.

Concurring and dissenting opinion by WILNER, J., in which BATTAGLIA, J., joins.

I join the Court's opinion and judgment with respect to Count I of the complaint, but, with respect, I dissent from its judgment as to Count II—the action on the bond. I believe that the Court has both failed to consider and misconstrued the relevant documents in concluding that final payment under the contract did not fall due until the final loan closing on November 1, 1984.

The Court notes that § 3C of the construction contract, which dealt specifically with final payment, stated that the balance due HEBA "shall be payable upon the expiration of 30 days after the work hereunder is fully completed, provided that all required government inspections had been completed, all required government approvals had been issued, and CDA had issued permission to occupy all units of the project." It notes as well that (1) under § 14 of the construction contract, CDA, upon issuing its final project report declaring construction complete, could designate certain specific improvements

---

remanding to the Circuit Court, there will be an opportunity for the parties more fully to develop their arguments regarding whether appellant's breach of warranty claim can lie under the performance bond in this case.

as incomplete, along with an estimated cost for the completion of those items, and (2) in that event, CDA would require, as a condition of final closing, that the parties enter into an escrow agreement, pursuant to which the owner would withhold from the final payment and deposit in escrow a sum equal to twice the CDA estimate of the cost of the incomplete items. What the Court omits to mention, however, because it flatly precludes the result that the Court reaches, is that, although the escrowed sum was to carry no interest, the contract expressly declared that the escrowed sum belonged to HEBA, subject only to its completion of the work set forth in the escrow agreement not later than the time specified in the agreement.

The full contract between the parties included a number of attachments known as the Contract Documents, one of which was a document entitled General Conditions of the Contract for Construction, a form document prepared by the American Institute of Architects and approved by the Associated General Contractors of America. Section 9.9.2 of those General Conditions stated, in relevant part, that neither the final payment nor the remaining retained percentage shall become due to HEBA until HEBA submitted to the architect (1) an affidavit that all payrolls and other bills connected with the work, for which the owner might be responsible, had been paid, (2) the consent of the surety to final payment, and (3) if required by the owner, certain other assurances of payment, releases, or satisfaction.

The evidence before the court showed that the City of Hagerstown conducted a final inspection of the project on December 16, 1983, that it issued a Use and Occupancy Permit the same day, that on December 21, 1983, the architect certified and appellant accepted that the work was substantially complete, and that, also on December 21, CDA granted permission for the occupancy of all 110 units of the project. The first tenant assumed occupancy on December 20. Attached to the architect's Certificate of Substantial Completion was the "punch list" items to be corrected or completed. Some amount, not clearly identified in the record, was withheld and placed in escrow in order to assure completion of

those items. On February 28, 1984, HEBA advised the architect that it had completed all of the items listed on the architect's final inspection report of October 6, 1983, and requested the architect to reinspect those items so that no escrow would be required at final closing.

It is not clear from the record when the architect reinspected the items. We know only that, on October 10, 1984, CDA applied to MHF for insurance of the advance of mortgage proceeds and that, on October 26, 1984, MHF approved an advance of $316,818. In its October 10 application, CDA certified that, to the best of its knowledge, information, and belief, "the sum requested is now payable." A final loan closing, for the release of the remaining funds, was set for and took place on November 1, 1984. On that day, CDA instructed its trustee to wire $24,839 to a New Jersey bank for the account of appellant and to transfer $17,706 to a special escrow account as a "Construction Surplus Account—Final Draw." A supporting memorandum shows that the disbursement would be $17,706 from the construction surplus account and $79,112 to the "sponsor." However one may view these instructions, it appears that final payment was, in fact, made to HEBA the next day, on November 2, 1984. We are told by appellant that the final payment to HEBA was in the amount of $111,360, although there is no explanation as to how that amount was calculated.[1]

Appellant urges that there were essentially two conditions precedent to final payment. Keying on the language in § 3 B

---

1. The record in this case is terribly confusing. Appellant's draw requisition, attached to the CDA application, showed a "FAF Escrow Refund" of $110,000, a construction surplus account of $17,706, and a "Balance to Sponsor" of $189,112, those three items totaling $316,818. CDA's ultimate authorization to release the remaining funds identified the $17,706 as the "Construction Surplus Account—Final Draw." It is impossible to tell from these documents, or from anything else in the record, whether the "final payment" to HEBA was to be $110,000, $17,706, or some other amount. As noted, the apparent final payment was $111,360. Apart from this confusion, so far as I can tell, the escrow agreement, the list of incomplete items, and the architect's final inspection of the "punch list" items are not in the record. There was a nearly eight-month hiatus between the time HEBA certified final com-

of the contract that payments to HEBA were "[s]ubject to the approval of CDA," it contends that CDA's approval was one condition to payment. CDA's ability to provide that approval, it argues further, was conditioned on the prior approval of MHF. For that proposition, it relies on the statement in CDA's October 10 application for insurance of advance payment that it intended to disburse the sum on a particular date (that was left blank in the document included in the record) "provided we receive prior approval." That approval from MHF, appellant claims, did not occur until November 1.

Appellant's reasoning, which has become the Court's reasoning, is unduly strained. Under the most rational reading of the contract, final payment was due to HEBA on December 21, when the architect certified substantial completion. By that time, all required inspections had been completed, a use and occupancy permit had been issued by the City of Hagerstown, and CDA had granted permission for the occupancy of all 110 units. The final draw was then authorized. It is true that some part of that amount was required to be placed in escrow, to assure the completion of the "punch list" items, but, under the clear wording of § 14 of the contract, dealing with that situation, the money placed in escrow belonged to HEBA, subject only to the forfeiture of its right to such of those funds allocable to an item that it thereafter failed to complete. The escrowed funds, therefore, constituted part of the final payment to HEBA under the construction contract. Section 14

---

pletion of the "punch list" items and the time CDA confirmed that completion, with no explanation for the cause of the delay. I cannot tell from the documents how much was withheld after substantial completion and put in escrow for the "punch list" items, or whether additional funds were also withheld. The copies of the CDA application to MHF and the Fund's approval of that application included in the record contain blanks and are not signed; nor is appellant's draw requisition. Compounding these uncertainties is the fact that, notwithstanding the direction in Maryland Rule 8–501(i) that documents presented to the trial court more than once shall be reproduced in full only once in the record extract, many of the documents, such as the construction contract, are reprinted several times. It would certainly have been helpful if the record were more complete and the record extract had been prepared in a more coherent way.

treated a declaration of substantial completion as a declaration of 100% completion and the escrow arrangement as a delay in disbursement of the final payment, rather than as a delay in when final payment became due.

Even if the escrowed funds were to be treated as a withholding from final payment under the construction contract itself, as appellant insists and the Court seems to hold, CDA's certificate to MHF that "the sum requested is now payable" establishes October 10 as the date final payment was due. Although, as a practical matter, CDA could not actually pay that sum until its loan closing with the MHF, the critical date, in my view, is not when CDA was able to disburse the final payment but when that payment fell due. It is not at all unusual for the disbursement of sums due to be delayed pending lender sign-offs and the preparation of closing documents. Accordingly, I would hold that the Circuit Court did not err in finding Count II barred by limitations.

Judge BATTAGLIA joins in this concurring and dissenting opinion.