MONTGOMERY COUNTY, MARYLAND *v.*
JOHN ELI ET AL.

[No. 495, September Term, 1973.]

*Decided February 20, 1974.*

The cause was argued before MENCHINE, MOORE and LOWE, JJ.

*Robert C. Park, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney for Montgomery County, Robert G. Tobin, Jr., Deputy County Attorney,* and *Joseph Ferrante, Jr., Assistant County Attorney,* on the brief, for appellant.

*Andrew J. Graham* and *Gary A. Graham* for appellees.

LOWE, J., delivered the opinion of the Court.

The process of determining legislative intent in matters of apparent statutory conflict has all of the procedural discipline of a picture puzzle. The interpretor thumbs through the myriad disjointed pieces until he happens upon similarities in any two. He then has a beginning. The rules of interpretation are equally well disciplined. One tells us "Where the public general law and the public local law of any county, city or town or district are in conflict, the public local law shall prevail." Md. Code, Art. 1, § 13; another that ". . . in case of any conflict between said local law and any Public General Law now or hereafter enacted, the Public General Law shall control." Md. Const., Art. XI-A, Sec. 3.[1]

Armed with these firm directions, all one need do is determine what is public general law and what is public

---

1. This applies to laws enacted by the Mayor and City Council of Baltimore City and the County Councils of chartered counties.

local law. We find that the legislature included in the Annotated Code of Maryland, *inter alia*, ". . . all the Public General Laws still in force . . . ." See Laws of Md. 1957, Chap. 23. A brief perusal will reveal a proliferation of local laws and exceptions scattered throughout the Code. See, *e.g.*, Md. Code, Art. 2B, "Alcoholic Beverages." To find other local laws "enacted by the legislature," one need only review each County's Code — provided one exists. If the County has not codified its laws, one begins with the pertinent article in the Code of Public Local Laws of 1930, then reviews all of the Acts of the General Assembly during the sessions in which they were authorized to enact local laws. That would include the annual sessions from 1966 to the present, and the bi-annual sessions in the odd years from 1930 to 1966. Between 1949 and 1966 the legislature met for thirty day sessions in the even years, primarily to approve a budget. Consequently, out of an abundance of caution, the session laws of the even years from 1949 to 1966 should be reviewed as well, for "emergency" legislation of a local nature.

While we have not discussed the common law rules of interpretation, text writers' views or judicial pronouncements of legislative intent, enough has been summarized to explain the dilemma of the Circuit Court for Montgomery County when John Eli and others contended that a fortunetelling prohibition in the County's local laws conflicted with a statewide licensing requirement. The presiding judge has reason to join us in our gratitude to the General Assembly and to the Chief Executive for authorizing and directing a "Code Revision Commission" of lawyers who, without compensation, struggle to turn the laws of Maryland into an ascertainable and understandable compendium.

In approving nearly one thousand statutes annually, each of the one hundred eighty-five legislators may be motivated by different reasons in effecting the common result. When conflicts appear it is their common purpose we seek, to which we have ascribed the euphemism "legislative intent." In doing so we hope to reconcile what may only appear conflicting. Nor can we criticize the existence of such

apparent conflicts when each year lawmakers are given ninety days to deliberate upon nearly three thousand proposals, which substantially alter existing volumes of general laws and a proliferation of local enactments.

The court below could not reconcile Md. Code, Art. 56, § 131 and Mont. Co. Code, Sec. 32-7. We are able to do so. The two sections in dispute are set forth below for purposes of comparison.

Section 131 of Article 56 of the Annotated Code of Maryland (1972 Repl. Vol.) provides:

"§ 131. License required.

It shall not be lawful for any roving bands of nomads, commonly called gypsies, or any person or persons composing any such bands, who have no permanent place of abode in the State of Maryland, to pitch or settle its or their encampment or carry on its or their business or transaction or practice their craft within the limits of any county of this State unless they, or some of them, shall first obtain from the clerk of the circuit court for any county of this State a license for such bands to pitch or settle its or their encampment or carry on its or their business or practice their craft in said county, for which shall be paid by the person applying for such license to the clerk of the said court the sum of one thousand dollars, for the use of said county, and a further sum of fifty cents to the clerk for his fee for issuing the same, such license to be issued in the name of the band for which such license is obtained, and if the band for which such license is obtained has no name by which the same is generally known by its members, then the party applying for such license shall designate to the clerk what name he desires such band to be called in the license to be issued, and such license, when issued, shall not entitle such band named in such

license, or any of its members, to return and pitch or settle its or their encampments or carry on their business or transactions or practice their craft after moving beyond the limits of said county."

Section 32-7 of the Montgomery County Code (1972) provides:

"Sec. 32-7. Fortunetelling.

Every person who shall demand or accept any remuneration or gratuity for forecasting or foretelling or for pretending to forecast or foretell the future by cards, palmreading or any other scheme, practice or device shall be deemed guilty of a misdemeanor and upon conviction thereof before any trial magistrate of the county shall be punished by a fine of not more than one hundred dollars or imprisonment for not more than six months; and in any warrant for a violation of the above provisions, it shall be sufficient to allege that the defendant forecast or foretold or pretended to forecast or foretell the future by a certain scheme, practice or device without setting forth the particular scheme, practice or device employed; provided, that this chapter shall not apply to any benefit performance or part thereof conducted pursuant to section 30-4 of this Code."

The Circuit Court for Montgomery County was asked to respond to three contentions in appellee's petition for declaratory relief, filed pursuant to Md. Code, Art. 31A.

1. Was the enactment of Section 32-7 of the Montgomery County Code (1972 Edition) a valid exercise of the general police power of Montgomery County, Maryland?

2. Has Section 32-7 of the Montgomery County Code (1972 Edition) unreasonably restricted

the Plaintiffs pursuit of their occupation to the extent of violating their constitutional rights of due process and equal protection?

3. Is Section 32-7 of the Montgomery County Code (1972 Edition) in conflict with State law, specifically Article 56, Section 131 of the Annotated Code of Maryland, requiring the declaration of the former's invalidity?

The court did not respond to the first or second questions, but decided that Sec. 32-7 of the Montgomery County Code was in conflict with Md. Code, Art. 56, § 131, and consequently declared the former invalid.

The judge reasoned that § 131 of Art. 56 of the Maryland Code was a mandatory and an express recognition and permission of fortunetelling in Maryland. He reasoned that the county could, under its police power, extend the state enactment by licensing "fortunetellers and soothsayers" as was done in Cecil, Charles and Calvert Counties. Md. Code, Art. 56, §§ 134A, 134B and 134C. He distinguished Mont. Co. Code Sec. 32-7 by finding that it was not a mere extension of police power coexistent with state law but rather "in clear terms a prohibition of what the State has expressly licensed." The court held that Art. 56, § 131 "expressly permitted" fortunetelling and the County law expressly prohibited it.

We do not agree. A careful reading of the language of Art. 56, § 131 reveals that the special license requirement was for groups or tribes with nomadic tendencies "who have no permanent place of abode in the State of Maryland."

Nowhere does the section refer to fortunetelling or any of its derivatives or synonyms. On the contrary, it refers only to privileges granted "roving bands of nomads . . . to pitch or settle its or their encampment or carry on its or their business or transaction or practice their crafts . . . ." The County prohibition is not directed at nomads who have no permanent residence in Maryland, but rather at the act of "forecasting or foretelling or for pretending to forecast or foretell the future . . . ." for a fee. In order to find that Art. 56, § 131 expressly authorized fortunetelling, the act

prohibited by Sec. 32-7, we would be required to take judicial notice that "forecasting and foretelling" is the "business" or "craft" of gypsies and nomads. We cannot do so. The state licensing law does not license fortunetelling. It licenses nomads, gypsies and other roving bands to do business in Maryland under the same conditions as such business is carried on by residents.

The trial court was apparently misled by the position of § 131 immediately beneath the subtitle:

"GYPSIES, FORTUNE-TELLERS, ETC.

§ 131.  License required."

The term "Fortune-Tellers" in the subtitle was intended to refer to other sections following that subtitle to which the court alluded in its example of "a proper extension of police power," *i.e.*:

"§ 134 A. License requirements for palm readers, fortune-tellers and soothsayers — Cecil County.

.  .  .

"§ 134 B. Same — Charles County.

.  .  .

"§ 134 C. Same — Calvert County."

Md. Code, Art. 1, "Rules of Interpretation," § 18, clearly advises that captions are mere catchwords to indicate contents of sections but are not to be taken as any part thereof:

"§ 18. Captions or headlines of Code sections and subsections.

The captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics or otherwise, are intended as mere catchwords to indicate the contents of the

sections and subsections. They are not to be deemed or taken as titles of the sections and subsections, or as any part thereof; and, unless expressly so provided, they shall not be so deemed or taken when any of such sections and subsections, including the captions or headlines, are amended or reenacted."

Quite obviously such headings are not the words of the legislature and cannot be read to inject an intent not expressed in the body of the law.

The court overlooked the fact that, in Md. Code, Art. 27, § 158A, the General Assembly permitted Caroline, Carroll and Talbot Counties to prohibit fortunetelling:

"§ 158 A. Caroline, Carroll and Talbot counties.

In Caroline County, Carroll County and in Talbot County every person who shall demand or accept any remuneration or gratuity for forecasting or foretelling or for pretending to forecast or foretell the future of another by cards, palm reading or any other scheme, practice or device, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $100.00 or be imprisoned in the county jail for a term of not more than six months, or both, in the discretion of the court."

This same language was borrowed by the Montgomery County Council in enacting Sec. 32-7 under the authority to enact local legislation delegated by Md. Const., Art. XI-A. That authority, described in the Montgomery County Charter, is identical to that utilized by the General Assembly in enacting the Caroline, Carroll and Talbot County statutes prohibiting fortunetelling. If the latter prohibitions do not conflict with § 131 of Art. 56, it is difficult to see how the Montgomery County provision could do so.[2]

---

2. This deduction is subject to any limiting restriction in either the authority delegated to or the authority assumed by Montgomery County. We find no such restriction applicable here.

Even in interpreting two legislative acts which appear to conflict, we are mindful that repeals by implication are not favored. "If two legislative acts can reasonably be construed together so as to give effect to both, such a construction is preferred." *Loker v. State,* 2 Md. App. 1, 9, aff'd. 250 Md. 677, cert. denied 393 U. S. 1082.

Each provision here can be given full effect, however, by recognition of its content. The purposes as well as the subject matter of the two laws are entirely different. ". . . the cardinal rule of statutory interpretation is that the intent of the legislature is to be sought in the first instance in the words of the statute." *Board of Supervisors of Elections of Baltimore City v. Weiss,* 217 Md. 133, 136.

Finally, we would be buttressed in our views by Md. Code, Art. 1, § 13 which provides that in conflicts between local and public general laws, the local shall prevail. We find, however, a contrary provision in the constitutional authority for local legislation which permitted Montgomery County to adopt its charter and thereby enact local laws exclusive of the General Assembly. Article XI-A of the Maryland Constitution restricts such authority by concluding Section 3 with:

> "All such local laws enacted by . . . the Council of the Counties as hereinbefore provided, shall be subject to the same rules of interpretation as those now applicable to the Public Local Laws of this State, *except that in case of any conflict between said local laws and any Public General Law now or hereafter enacted the Public General Law shall control.*"

(Emphasis added.)

The purpose of this legislative exception is quite obvious, and needs no "interpretation." So long as the General Assembly enacted local laws, it was satisfied with the common law principle that local laws prevailed over general laws in case of conflicts, as that principle was codified in Art. 1, § 13. However, upon ratification of the constitutional provision authorizing counties to legislate exclusive of the

legislature's control, the legislature could not chance a local government's obviating or preempting the authority and responsibility entrusted to the General Assembly. For unchartered counties, Art. 1, § 13 is an applicable interpretive rule.

For our purpose the question is easily resolved. A conflict exists only when an ordinance prohibits something permitted by the legislature, or permits something prohibited by the legislature. *Heubeck v. City of Baltimore*, 205 Md. 203, 208. We find that the criminal prohibition of fortunetelling in Montgomery County does not conflict with the licensing of nomads and gypsies "to pitch or settle its or their encampment or carry on its or their business or transaction or practice their craft . . . ."

The trial court did not reach questions 1 and 2, nor do we. Md. Rule 1085.

> *Judgment reversed and case remanded for further proceedings; costs to be paid by appellee.*