Dear Mr. Ellsworth Naylor,
You have asked for an opinion on the effect of two provisions of the State alcoholic beverages law when the Board of License Commissioners of Montgomery County (the "Liquor Board" or the "Board") is unable to reach a decision, by a vote of three of its members, on an application for a liquor license. One provision, specific to Montgomery County, requires the affirmative concurrence of at least three members of the Board to approve, as well as to deny, a license. The other provision, which applies statewide, calls for approval of a license application unless a liquor board makes certain findings against the applicant. You ask whether these two provisions conflict and, if so, which controls.
We conclude that the two provisions, properly construed, can be harmonized in the following manner. If three members of the Board are unable to concur on either issuance or denial of the license and to make the requisite findings, the Board should defer action on the application until a future meeting. It is possible that absent members of the Board may be present at a reconvened meeting, or that members who were initially present may have reconsidered the matter, and that three members will then concur.
If the reason for inability to obtain agreement of three members is that one or more members decline to act because of actual or potential conflicts of interest, the Board may invoke the "rule of necessity," which would allow those members to participate so that the Board can reach a decision. If the Board's failure to act continues for an unreasonable period of time, or is attributable to the existence of one or more vacancies, an applicant may apply to the circuit court for a writ of mandamus to compel a decision or the necessary appointments to the Board.
Resort to the rule of necessity or to a writ of mandamus might be avoided if the General Assembly were to clarify the alcoholic beverages law applicable to Montgomery County by making either approval or denial alone contingent on the assent of a majority of license commissioners.
 I Statutory Provisions
A. Statewide Provision — Section 10-202(a)(2)
The State alcoholic beverages law is codified in Annotated Code of Maryland, Article 2B, § 1-101 et seq. Section 10-202(a), applicable for the most part statewide, sets out the general procedure by which local boards of license commissioners act on applications for liquor licenses. Paragraph (1) requires a local board to publish notice and hold a hearing at which any person may testify for or against the application. Paragraph (2), the portion pertinent to your inquiry, then provides:
 (2)(i) The application shall be disapproved and the license for which application is made shall be refused if the Board of License Commissioners for [Baltimore] City or any county determines that:
 1. The granting of the license is not necessary for the accommodation of the public;
 2. The applicant is not a fit person to receive the license for which application is made;
 3. The applicant has made a material false statement in his application;
 4. The applicant has practiced fraud in connection with the application;
 5. The operation of the business, if the license is granted, will unduly disturb the peace of the residents of the neighborhood in which the place of business is to be located; or
 6. There are other reasons, in the discretion of the Board, why the license should not be issued.
 (ii) If no such findings are made by the Board, then the application shall be approved and the license issuing authority shall issue the license for which application is made upon payment of the fee required to the local collecting agent.
B. Montgomery County Provisions
 1. Section 10-202(m)
Other paragraphs of § 10-202(a) and later subsections of § 10-202 include local provisions for specific Maryland counties.[1]
Section 10-202(m) sets forth procedures for the issuance and transfer of liquor licenses in Montgomery County, as follows:
 (m)(1) In Montgomery County, before a license is issued or transferred, the Board of License Commissioners shall cause a suitable sign or notice to be posted . . . on the premises described in the application . . . .
 (2) A decision on an application for a license shall be made on the basis of evidence of record.
 (3) When the Board of License Commissioners acts upon an application for a license, the Board shall adopt a resolution which shall contain a detailed statement of the grounds and findings forming the basis for the decision and the vote of each member of the Board on the decision. . . .[I]n the case of denial, the Board shall inform the applicant in writing of the procedures for appeal.
 (4) The Board shall adopt rules of procedure, subject to the approval of the County Council.
 2. Section 15-104
Later in Article 2B, § 15-104 provides for the appointment of members of the boards of license commissioners in certain counties by the county commissioners or the county executive. Section 15-104(c) details the structure of the Montgomery County Board and includes additional provisions concerning its procedure:
 (c)(1) In Montgomery County, the Board of License Commissioners consists of 5 members, appointed by the county executive, subject to confirmation by the county council.
 (2) Each member of the Board serves a term of 4 years . . . .
 (3) Not more than three members of the Board shall be members of the same political party.
 (4) The Board annually shall elect one of its members as chairman.
 (5) Three members of the Board constitute a quorum for transacting business. At least three members who are present at the voting session must concur in the approval, denial, revocation, suspension, or reclassification of an alcoholic beverage license.
C. Possible Conflict
You have discovered that the import of these provisions is unclear when no three members of the Board agree on what action to take. On its face, § 15-104(c)(5) appears explicit: "Three members of the Board constitute a quorum for transacting business. At least three members who are present at the voting session must concur in the approval, denial, revocation, suspension, or reclassification of an alcoholic beverage license." However, as you observe, that section provides no guidance to cover the foreseeable contingency that a quorum of three might be present at a Board session called to vote on a license application, but three members might not agree on one or another course of action — that is, approval, denial, revocation, suspension, or reclassification. The problem might arise because one or more Board members are absent, because one or more members perceive conflicts of interest that prevent them from voting on the application, or because the members are split on whether the issuance of a license is necessary to accommodate the public, whether the applicant is fit to receive the license, or whether any of the other findings in § 10-202(a)(2)(i) should be made. In your letter, you postulate a situation in which only four members of the Board participate and they are deadlocked 2-2 on whether to approve or deny the application.
If the Board cannot reach a decision under § 15-104(c)(5), one might look to § 10-202(a)(2)(ii) as reflecting an intention on the part of the General Assembly that a license be issued because three members fail to agree on negative findings under § 10-202(a)(2)(i). However, if § 10-202(a)(2)(ii) were read in this manner, it would present a direct conflict with the § 15-104(c)(5) requirement that "[a]t least three members . . . must concur in the approval . . . of an alcoholic beverage license."[2]
Section 15-104(c)(5) plainly requires that either approval or denial of a license is contingent on the vote of at least three members of the Board.[3] Section 10-202(a)(2)(ii) provides that a license is to be issued unless the Board makes one of the negative findings listed in § 10-202(a)(2)(i); and in Montgomery County, the concurrence of three members is necessary to make such a finding. Thus, both statutes require three votes to deny a license, while the provision specific to Montgomery County also requires three votes to grant a license. The possible conflict arises when, for some reason, there are not three votes for either action.
 II Analysis
To respond to your question, we first examine the extent to which the statutory provisions should be harmonized in light of their legislative history. Second, we consider how the Board may give effect to both provisions when there appear to be less than three votes for either approval or denial.
A. Whether the Statutes Conflict
 1. The Rule of In Pari Materia
Under the rule of in pari materia, a fundamental rule of construction frequently announced and applied by Maryland appellate courts, both statutes should be given effect to the extent possible. For example, inState v. Ghajari, 346 Md. 101, 115, 695 A.2d 143 (1997), the Court of Appeals declared: "We presume that the legislature intends its enactments `to operate together as a consistent and harmonious body of law.' . . . Thus, when two statutes appear to apply to the same situation, this Court will attempt to give effect to both statutes to the extent that they are reconcilable." See also State v. Bricker, 321 Md. 86, 93, 581 A.2d 9
(1990); Kaczorowski v. Mayor of Baltimore, 309 Md. 505, 511, 525 A.2d 628
(1987); Bridges v. Nicely, 304 Md. 1, 10, 497 A.2d 142 (1985); Kirkwoodv. Provident Savings Bank, 205 Md. 48, 56, 106 A.2d 103 (1954) ("If [a] subsequent Act can be made, by any reasonable construction or intendment, to stand with the previous legislation, that construction will always be adopted"); Montgomery County v. Eli, 20 Md. App. 269,277, 315 A.2d 136, cert. denied, 271 Md. 735 (1974). The rule of in parimateria applies even if the statutes involved were enacted at different times and without reference to one another. Management PersonnelServices, Inc. v. Sandefur, 300 Md. 332, 478 A.2d 310 (1984).
2. Legislative History
The legislative history of §§ 10-202 and 15-104 provides a compelling case for harmonizing the two provisions, since the General Assembly amended the very statutory provision embodying § 10-202 when it later enacted § 15-104.
Section 10-202(a) of Article 2B can be traced back at least as far as Chapter 501 of the Laws of Maryland 1947, the legislation establishing in its present form the State's system for regulating liquor sales. See 75Opinions of the Attorney General 62, 64 (1990). The 1947 legislation added to Article 2B a new § 52(a), under which boards of license commissioners were required to cause the publication of notice of any license application and to hold a hearing. Section 52(a) then continued:
 If the Board of License Commissioners . . . determines that the granting of the license is not necessary for the accommodation of the public or that the applicant is not a fit person . . ., or has made a material false statement in his application, or has practiced fraud in connection with said application, or that the operation of the business, if the license is granted, will unduly disturb the peace of the residents of the neighborhood . . ., or that there are other reasons, in the discretion of the Board, why the license should not be issued, then the application shall be disapproved and the license applied for shall be refused. If no such findings are made by the Board, then the application shall be approved and the said Board shall issue its certificate of approval . . . .
It was not until some 32 years later that the General Assembly enacted, in the same piece of legislation, the substance of what are now §§ 10-202(m) and 15-104(c) of Article 2B. Chapter 181, Laws of Maryland 1979.[4] Chapter 181 was sponsored by the Montgomery County delegation, and it added to a then-existing provision substantially identical to current § 10-202(m)(1) all of the language now embodied in § 10-202(m)(2)-(4). It also replaced a then-existing requirement that the Montgomery County Executive appoint a three-member board of license commissioners with language calling for the County Executive to appoint a five-member board, adding the precise words now embodied in § 15-104(c)(3)-(5).
Because the 1979 enactment itself amended Article 2B, § 60, the successor to § 52 and the predecessor of current § 10-202 — a section that in 1979 included both the general provisions now codified in § 10-202(a) and the local Montgomery County provisions now codified in § 10-202(m) — it seems safe to conclude that the General Assembly was fully aware of the general decision-making requirements in that section, and that it did not find them inconsistent with the new requirement that three members of the Board concur in any decision to issue or deny a liquor license.[5]
B. Harmonizing the Statutory Provisions
The two statutes are both satisfied if three members of the Board vote to deny a license and make one of the findings specified by § 10-202(a)(2)(i).[6] Likewise, both statutes are satisfied if three members vote to grant a license. Thus, there is no inevitable conflict between the statutes in many cases, particularly when all members of the Board are present and vote on a decision.
However, when all five members of the Board do not participate, the Board may find itself unable to comply with one or both statutes. For example, if, because of absences, recusals, abstentions, or vacancies, there are not three members in agreement on either issuance or denial, the Board will be unable to make a finding necessary to the denial of a license under § 10-202(a)(2), and it will likewise be unable to comply with the requirements of § 15-104(c)(5) to either grant or deny the application. Depending on the reason for failure to obtain the required three votes, there are several options that would permit compliance with both statutes.
1. Postponement of Decision
First, the Board might postpone its decision on the pending license until a future meeting. Absent members of the Board might be present at the reconvened meeting, or members who were initially present might have altered their views, so that there would be concurrence of three votes for a particular decision at the subsequent meeting. In some cases, however, the Board might have to resort to the rule of necessity to obtain the necessary votes.
2. The Rule of Necessity
If failure to obtain the concurrence of three members were a result of the refusal or reluctance of one or more members to participate, based on actual or potential conflicts of interest, the Board might invoke the "rule of necessity," a common law doctrine that prevails over disqualification standards. See United States v. Will, 449 U.S. 200,211-16 (1980) (tracing lineage of the common law rule of necessity, as it applied to judges, to its origins under English common law). Under that doctrine, if a public body is unable to reach a decision because one or more members have disqualified themselves based on conflicts of interest, and if there is no alternative tribunal to decide the matter, any member subject to conflicting interests is allowed to vote despite those conflicts. See Barker v. Secretary of State, 752 S.W.2d 437, 440-41
(Mo.Ct.App. 1988); Allen v. Toms River Regional Board of Education,559 A.2d 883 (N.J.Super. 1989).
Maryland courts have employed the rule of necessity in a number of instances. For example, in Gordy v. Dennis, 176 Md. 106, 5 A.2d 69
(1939), a case cited by the Supreme Court in Will, the Court of Appeals considered whether judges on that Court should recuse themselves from a case concerning the imposition of a state income tax on the salary of judges. The Court noted that "the disqualification of all the judges would destroy the only tribunal in which relief by appeal may be sought. . . . So, of necessity, the rule as to the disqualification of judges must yield . . . ." 176 Md. at 109. See also Chairman, Board ofTrustees v. Waldron, 285 Md. 175, 179-80, 401 A.2d 172
(1979); Attorney General v. Waldron, 289 Md. 683, 685 n. 2,426 A.2d 929 (1981).
The rule of necessity applies to administrative bodies that exercise quasi-judicial functions, such as granting or revoking licenses. Board ofMedical Examiners v. Seward, 203 Md. 574, 581-83, 102 A.2d 248 (1954).See also Opinion No. 86-029 (April 30, 1986) (unpublished) (rule of necessity would require mayor to conduct hearing on charges against members of board of housing commissioners, even if there were a basis for disqualification of mayor). The General Assembly has also incorporated the doctrine in the State Public Ethics Law. Annotated Code of Maryland, State Government Article ("SG"), § 15-501(c).[7] A person who invokes the rule of necessity to take part in a decision in spite of disqualifying circumstances should disclose the nature of the conflict.See id.
Thus, if the Board's failure to muster three votes for either approval or denial of a license is the result of a recusal, under the rule of necessity the recused members could participate in the matter, after stating the nature of the conflict.
3. Mandamus
Finally, if intransigence on the part of one or more Board members were to continue for such an unreasonable period of time as to threaten a deprivation of due process to a license applicant, the applicant would have the right to bring an action for mandamus to compel the Board to reach a decision. See A.H. Smith Sand Gravel Co. v. Department of WaterResources, 270 Md. 652, 661-62, 313 A.2d 820 (1974). Similarly, if the Board were unable to act because of vacancies that the appointing authority for some reason failed to fill, the applicant could apply to a court to compel the necessary appointments.
 III Conclusion
In summary, § 10-202(a)(2)(ii) and § 15-104 can be read harmoniously to require that three members of the Board affirmatively concur in the issuance or denial of a liquor license. If three members cannot immediately concur, the matter may be postponed until a later Board meeting, the rule of necessity may be invoked when appropriate, or, in an extreme case, the license applicant may obtain the intervention of a court. The need to resort to extraordinary measures could be avoided if the General Assembly were to clarify the alcoholic beverages law applicable to Montgomery County to make approval or denial alone contingent on the assent of a majority of license commissioners.
J. Joseph Curran,Jr. Attorney General
Judith A. ArmoldAssistant Attorney General
 Robert N. McDonald Chief CounselOpinions Advice
[1] Section 10-202(a)(3) begins: "The provisions of this paragraph apply to the subdivisions listed and supersede conflicting provisions elsewhere in this subsection [i.e., in § 10-202(a)(1) and (2)]." Seealso Article 2B, § 1-103 (where statement of general rule is followed by local exceptions, the local exceptions prevail to the extent of any inconsistency).
[2] Similarly, if the Legislature were to revise § 10-202(a)(2) to make affirmative findings a prerequisite to approval of a license — as in a provision that currently applies in Prince George's County, see footnote 3 below — there would be a potential conflict with the requirement of § 15-104(c)(5) that three members concur in the denial of a license.
[3] This situation also pertains in two other counties, for which virtually identical provisions require that at least three members of their five-member liquor boards concur in the approval, denial, revocation, suspension, or reclassification of a liquor license. See
Annotated Code of Maryland, Article 2B, § 15-104(b) (Charles County); § 15-104(d) (Queen Anne's County).
By contrast, in Prince George's County the statute requires that at least three members of the five-member liquor board concur only for approval of a liquor license. Article 2B, § 10-202(a)(3)(v). In addition, the findings required to justify approval of a license have been recast for Prince George's County so as to supersede § 10-202(a)(2) and therefore eliminate any possible conflict.
[4] At the time Chapter 181 was being considered in the General Assembly, a similar provision governed the proceedings of the Montgomery County Board of Appeals ("Zoning Board"). All actions or decisions of the Zoning Board, except decisions with respect to special exceptions, required the affirmative vote of at least three of the five members of the board, and special exception decisions required the affirmative vote of at least four members. Montgomery County Code, § 59-A-4.123. In contrast to Article 2B, § 15-104(c)(5), the County Code contained a "tie-breaker" provision for zoning matters, to the effect that "[i]f the concurrence of the necessary total of affirmative votes shall fail to be achieved for any reason, then the petition or application shall be held to be denied, or the action appealed from shall be held to be affirmed." Chapter 181, on the other hand, did not specify the consequences of failure of the members of the Liquor Board to concur.
[5] If there were an irreconcilable conflict between § 10-202(a) and § 15-104(c), a number of factors might compel the conclusion that § 15-104(c) should prevail. First, Article 1, § 13 of the Annotated Code of Maryland provides that a public local law, at least one enacted by the General Assembly, prevails over a public general law on the same subject. See Montgomery County v. Eli, supra,20 Md. App. at 277-78. In addition, the alcoholic beverages law itself provides that a local exception or qualification prevails over a conflicting general provision. Article 2B, § 1-103. Finally, under general precepts of statutory construction, later-enacted and more specific or local legislation prevails over earlier-enacted and more general legislation.See, e.g., Farmers Merchants Nat'l Bank v. Schlossberg, 306 Md. 48,63, 507 A.2d 172 (1986). However, our conclusion that the two sections can be harmonized avoids the need to reach this question.
[6] In theory, it is conceivable that there could be three votes to deny an application, thus satisfying § 15-104(c)(5), but that the three members would not agree on one of the reasons for denying a license set forth in § 10-202(a)(2)(i). However, § 10-202(a)(2)(i)6 authorizes a board to deny an application if there are "other reasons, in the discretion of the Board, why the license should not be issued." We think it unlikely that three members who vote to deny a license could not come to agreement on a finding under this provision.
[7] SG § 15-501(c) states that an official who otherwise would be disqualified from participating in a matter may nonetheless participate in the decision if:
 (1) the disqualification would leave a body with less than a quorum capable of acting;
 (2) the disqualified official or employee is required by law to act; or
 (3) the disqualified official or employee is the only individual authorized to act.
 *Page 33